SKAGGS, Appellant,

v.

MAYFIELD, Admr., et. al., Appellees.

[Cite as *Skaggs v. Mayfield* (1989), 62 Ohio App.3d 355.]

Court of Appeals of Ohio,
Greene County.

No. 88–CA–81.

Decided May 16, 1989.

*Jeffrey M. Decile,* for appellant.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Alys M. Portman* and *Michael L. Squillace,* Chief Assistant, for appellees James L. Mayfield, Administrator, Bureau of Workers' Compensation, and Industrial Commission of Ohio.

*Ronald P. Keller,* for appellees David and Debbie Peters.

GRADY, Judge.

This case is before our court on appeal from three orders of the Industrial Commission of Ohio and one of the Common Pleas Court of Greene County.

Shrell Skaggs, the appellant, sought workers' compensation for an injury sustained while engaged in the employ of David and Debbie Peters, appellees, in their home. The district hearing officer of the Industrial Commission found that Skaggs was not an "employee" under R.C. 4123.01(A)(1)(b)(i) entitled to workers' compensation because she failed to earn $160, the minimum required for coverage of household workers. On appeal to the Dayton Regional Board of Review, the district hearing officer's decision was reversed. The regional board of review was, in turn, reversed by an order of the full Industrial Commission, finding that Skaggs was not an "employee" under the Workers' Compensation Act because she was an independent contractor. That decision of the Industrial Commission was appealed to the common pleas court. The court granted a summary judgment, finding that Skaggs had not earned the requisite amount of money under R.C. 4123.01(A)(1)(b)(i).

I

In September 1985, Skaggs orally contracted with David and Debbie Peters, who are teachers, to clean their house every Friday during the school year. It was agreed that she would be paid $25 for every day she cleaned. On October 25, 1985, Skaggs fell on the stairs at the Peterses' house, injuring her ankle. It was her fifth time cleaning the Peterses' house for $25 per visit. She earned a total of $125 before the injury prevented her working further.

Debbie Peters' affidavit claimed that the terms of the contract were that Skaggs would clean only *as needed* on Fridays. Though this is in dispute, it is not in dispute that Debbie Peters and appellant agreed to talk by phone each Thursday night for appellant to receive instructions about what needed cleaning the following day.

The Peterses supplied the cleaning supplies and initially showed Skaggs how cleaning supplies were to be used. Skaggs worked unsupervised and took as much time as she needed to finish the job, as long as she was finished by 3:30 p.m. Skaggs cleans other houses and has advertised in a newspaper as a housecleaner.

Debbie Peters paid cash weekly for appellant's services. No taxes were withheld or paid by the Peterses. Skaggs filed taxes as a "sole proprietor."

The Peterses are not involved in the business of housecleaning. Debbie Peters is a teacher, and that is how we know that Skaggs was engaged for a

definite term, until the end of the school year, with future arrangements to be negotiated.

Appellee stated in her affidavit that Skaggs was free to bring extra help with her to clean the Peterses' house, but Skaggs states that she was not informed of that alternative.

## II

Appellant raises one assignment of error:

"The trial court erred to the prejudice of the plaintiff when it entered judgment in favor of the defendants and when it held that the plaintiff was not covered by the Workers' Compensation Act when she injured herself while working."

In relevant part, R.C. 4123.01 states the following:

"As used in Chapter 4123. of the Revised Code:

"(A)(1) 'Employee,' 'workman,' or 'operative' means:

"(a) * * *;

"(b) Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, *household workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single household* and casual workers who earn one hundred sixty dollars or more in cash in any calendar quarter from a single employer * * *." (Emphasis added.)

It is not disputed that Skaggs is, in her relationship with the Peterses, a "household worker." The controversy presented by this case arises from the ambiguity of R.C. 4123.01(A)(1)(b) as it operates to grant or deny her coverage according to her earnings. Two interpretations are possible. The provision, identified above, may be held to mean that coverage is available to any household worker who according to his contract of employment will in the quarter concerned earn $160 or more and who, but for his injury, *would have earned* that amount. More narrowly, it may be held to mean that coverage is available to a household worker only when he *has earned* $160 or more in any calendar quarter.

The Industrial Commission urges us to follow the more narrow meaning of the latter interpretation. We recognize that the state has a legitimate and proper concern in the integrity of its workers' compensation insurance system, particularly that it remain solvent. Premiums, which directly determine solvency, are determined by the occupation and wages paid. Occasional

employment that produces low wages will, if covered, produce a low premium. Occasional users of household services should not be allowed to avoid tort liability (see R.C. 4123.74) at a cost unfairly low to the employer and, because of low premiums, unreasonably high to the state's system.

The legislature has assumed control of this issue and attempted its resolution through the requirement of $160 per quarter in wages as a condition for coverage. Its statutory expression is, however, ambiguous. In such circumstances, the courts must resolve the ambiguity consistent with the discernible intentions of the legislature.

Ohio's system of workers' compensation has, historically, resolved questions more in favor of coverage than against. The coverage provided is the broadest possible. *Victory Baptist Temple, Inc. v. Indus. Comm.* (1982), 2 Ohio App.3d 418, 2 OBR 510, 442 N.E.2d 819.

We are persuaded that it was the intention of the legislature to offer coverage to any household worker who according to his contract of employment will in the quarter concerned earn $160 or more and who, but for his injury, would have earned $160 or more, and we so hold. This meaning puts a burden on the trier of fact to determine the terms of the employment agreement. This is by no means, however, an impossible burden.

Were we to find that the condition for coverage is met when an employee *has earned* $160 or more in any calendar quarter, it would necessarily follow that no household worker is covered in the first part of the quarter until that wage is accumulated. Coverage established in a prior quarter would be lifted during that term, producing an interruption or lapse at odds with the need for regular and continuous coverage. Employers who reasonably expect that they are exempted from tort liability because they have subscribed to the system would have no exemption during that term. Even worse, should exemption from tort liability continue but without workers' compensation coverage, household employees would have no recourse for workplace injuries during that time.

The summary judgment and dismissal granted by the trial court in its judgment entry filed September 14, 1988, was determined only on the basis of the amount of wages earned by appellant. That order is reversed and the cause is remanded to the trial court for a determination of appellant's status as an employee under R.C. 4123.01(A)(1)(b) consistent with this opinion.

Appellees argue that coverage should be denied appellant because she was, as to the Peterses, not an employee but an independent contractor and thus ineligible for coverage under R.C. Chapter 4123. The trial court made no finding on that issue, though it was raised as another branch of the motion for

summary judgment of appellee Mayfield. We can make no determination concerning that issue as it is not properly before us upon notice of appeal.

*Judgment reversed*
*and cause remanded.*

WILSON and FAIN, JJ., concur.